## JOHN ROSS
*vs.*
## POST PUBLISHING CO.

Superior Court      Fairfield County      File No. 60883

### MEMORANDUM FILED MARCH 19, 1941.

*Reich & Reich,* of Bridgeport, for the Plaintiff.

*Pullman & Comley,* of Bridgeport, for the Defendant.

FOSTER, J. On July 12, 1939, the plaintiff, John Ross, a boy then 14 years of age, fell from an automobile then being operated by Julio Toraya and owned by the brother of the latter. From such fall the plaintiff received injuries, for which he here sues the only defendant, the Post Publishing Company.

That John Ross was not guilty of contributory negligence in the premises is clear. He was at the time of his fall conducting himself as would a reasonably prudent boy of his age under the then existing circumstances.

It is equally clear that Julio Toraya was guilty of negligence alleged in paragraph seven of the complaint, which was a proximate cause of the plaintiff's injuries.

But the controlling question as to the liability of the sole defendant, the Post Publishing Company, is whether at the time in question Toraya was an agent of the defendant, as claimed in paragraph one of the complaint and denied in the answer.

The Post Publishing Company is a publisher and seller of a daily newspaper known as the Bridgeport Post. It maintains and operates several branch offices in Bridgeport, from which it sells newspapers and delivers them in quantities to boys and

men, who in turn sell single papers to readers, so-called. The purchasers at a branch office are what are termed newsboys.

In the present case the defendant sold a substantial number of papers to Julio Toraya at one cent each. Toraya sold these individual papers to members of the public at two cents each. He procured the gratuitous service of the plaintiff and another boy for the delivery of the papers to his individual customers. In such delivery he used his brother's automobile.

Much evidence was received as to the actions and conduct of the defendant, so that thereby the court might be aided in determining this question of agency. Among other facts it appears that the only single papers that the defendant sells are those for which subscription is made and for which payment is made to the defendant and which are mailed from the main office of the defendant. The ordinary price charged to news-boys at branch offices is one cent each; yet some news dealers are charged $1.25 per hundred or some other price. The newsboys ordinarily sell the papers at two cents each, but in some instances they sell them at 15 cents or 18 cents for the six papers delivered by them upon the six weekdays of the week. The defendant in aid of its circulation advertises the sale of a certain kind of life or accident insurance. Any one may purchase such insurance, whether he buys a copy of the Bridgeport Post or not. Those who buy the Bridgeport Post may request newsboys to carry and deliver to the defendant a weekly premium on the insurance. The newsboys are not paid for such service. They are not obligated to render such service. They do it for the reader of the Bridgeport Post—the insured—and thereby retain the reader as a customer. The newsboys secure readers for the defendant and the defendant pays the newsboys 40 cents for each reader so secured or gives him a prize for securing such readers.

It might appear at first approach that the defendant was really selling its product to the public, but had evolved the carefully considered plan to relieve itself from any respon-sibility for the acts of those who carry out such sale for the defendant. Upon consideration it appears unreasonable that the defendant or any one else would willingly assume re-sponsibility for the many acts of the boys and men who deliver papers. Many of the boys are young; their number is great; they are scattered all over the City of Bridgeport and its

■■■■■■

suburbs; some deliver papers on foot, some on bicycles, some in automobiles of all kinds and conditions; supervision over all of them would be impossible.

This case is an excellent example of the impossibility of controlling the actions of all the boys and men who deliver the paper published by the defendant. Here Toraya bought the papers at the branch office of the defendant and paid for them. He wanted to get through with his deliveries as soon as possible, so that he might go swimming. He took his brother's used automobile and asked the plaintiff and another boy to help him deliver papers, promising them that he would later convey them in the automobile to the swimming place. The automobile was loaded with papers; Toraya operated the automobile through the streets upon which lived his customers; the plaintiff stood on the right running board, and the other boy stood on the left running board; Toraya would stop at a house; the plaintiff or the other boy, depending on which side of the street it was, would jump off from the automobile, run to the door of the house and leave the paper, and then run back to the automobile and jump on to the running board. No principal could control such agents as these.

And so the defendant sells its papers in bulk to the newsboys and receives from the newsboys the wholesale price of the papers. The newsboys then sell the papers at retail at a profit. There is no difference between this transaction and the sale of any manufactured product by a manufacturer in large quantities at a wholesale price to a retailer, who in turn sells to the consumer at a profit.

Here is proved no agency.

Judgment is rendered in favor of the defendant against the plaintiff.